JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Kristin Brodsky

**DEFENDANTS**

Medical Guardian, LLC

**(b)** County of Residence of First Listed Plaintiff    Gloucester Co., NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia Co., PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Albert J. Michell, PC, 40 W. Evergreen Ave. Ste 101, Phila., PA 19118 (tel. 215.922.2588)

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Section 2000 et seq., 42 USC Section 12111 et seq.

Brief description of cause:
Racial discrimination/harassment, disability discrimination and retaliation in employment.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE      DOCKET NUMBER

DATE
1/9/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Kristin Brodsky

                     :                          CIVIL ACTION

                     :

Medical Guardian, LLC

                     :

                     :                          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.           ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.           ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.      ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.           ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (X )

| | | |
|---|---|---|
| 1/9/2026 | Albert J. Michell | Kristin Brodsky |
| Date | Attorney-at-law | Attorney for |
| 215.922.2588 | 215.922.2590 | albertjmichell@gmail.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

10/2024

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM

Place of Accident, Incident, or Transaction: ___1818 Market Street, Suite 1200, Philadelphia, pa 19103___

---

**RELATED CASE IF ANY:** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                             Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?            Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same   Yes ☐
   individual?

5. Is this case related to an earlier numbered suit even though none of the above categories apply?                 Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ is not related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☒ 7. Copyright/Trademark
- ☒ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief *see certification below*
- ☐ 16. All Other Federal Question Cases. *(Please specify):*_____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):*_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ does / ☒ does not have implications beyond the parties before the court and ☐ does / ☒ does not seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kristin Brodsky<br>11 Bridle Lane<br>Sewell, NJ 08080<br><br>          Plaintiff<br><br>v.<br><br>Medical Guardian, LLC<br>1818 Market Street<br>Suite 1200<br>Philadelphia, PA 19103<br>          Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:     CIVIL ACTION<br>:     DOCKET NO.:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

Comes now the Plaintiff Kristin Brodsky, by and through counsel Albert J. Michell, Esquire, and for her complaint and cause of action, states as follows:

## PARTIES

1.  Plaintiff, Kristin Brodsky (hereinafter "Plaintiff" or "Ms. Brodsky"), is an adult African American female and a resident of the state of New Jersey, living at 11 Bridle Lane, Sewell, NJ 08080.

2.  Defendant Medical Guardian, LLC, (hereinafter "Defendant" or "Medical Guardian, LLC") is a limited liability company with a license to do business in Pennsylvania with its headquarters and principal place of business located at 1818 Market Street, Suite 1200, Philadelphia, PA 19103. Medical Guardian, LLC is a person as defined in 42 U.S.C. Sec 2000e-2(a).

3.  At all times relevant to this action the above named Defendant was "engaged in an industry affecting commerce" within the meaning of Sections 701(g) and 701(h) of Title VII, 42 U.S.C. Sections 2000e(g) and 2000e(h).

At all times relevant to this action Defendant employed 100 or more employees.

At all times relevant to this action Defendant was an "employer" within the meaning of

Section 701(b) of Title VII, 42 U.S.C. Section 2000e(b).

 At all times relevant to this action Defendant was an "employer" within the meaning of Section 4 of the Pennsylvania Human Relations Act (hereinafter "PHRA"), 43 P.S. Section 954.

 At all times relevant to this action Defendant was an "employer" within the meaning of Section 5 of the PHRA, 43 P.S. Section 955.

4. At all times relevant to this action Defendant was "engaged in an industry affecting commerce" within the meaning of the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12111(2) (hereinafter "ADA"), and the Americans with Disabilities Act Amendments Act of 2008 (hereinafter "ADAAA").

5. At all times relevant to this action Defendant was a "covered entity" as defined under Section 12111(2) of the ADA and the ADAAA.

## JURISDICTION

6. Jurisdiction of this Court comes under 28 U.S.C. Sec. 1331 (Federal Question) based on Plaintiff's claims under Title VII and the ADA/ADAAA. The state law components of this action arise under the PHRA. This Court has supplemental subject matter jurisdiction over the state law components of this action pursuant to 28 U.S.C. Section 1367(a).

## VENUE

7. Venue in this district is proper because the discriminatory acts complained of occurred primarily at Defendant's business location at 1818 Market Street, Suite 1200, Philadelphia, PA 19103, located within the Eastern District of Pennsylvania and Plaintiff resides in this District.

## PROCEDURAL REQUIREMENTS

8. Within 300 days of the occurrences of the acts of discrimination of which she complains, Plaintiff dual filed Charges of Discrimination against Defendant with the Equal Employment Opportunity Commission (hereinafter "EEOC") and the Pennsylvania Human Relations Commission (hereinafter "PHRC") alleging race and disability-based employment discrimination and retaliation.

 The EEOC and PHRC have held exclusive jurisdiction over Plaintiff's complaints for

over 6 months.

To date, neither the EEOC or PCHR have reached a conciliation agreement to which Plaintiff is a party.

On November 14, 2025, the EEOC issued a Notice of Right To Sue letter, allowing Plaintiff to sue in Federal Court within ninety (90) days of receipt. (See attached Notice of Right to Sue letter dated November 14, 2025.)

## STATEMENT OF FACTS

9.      Defendant Medical Guardian, LLC is a medical device company with its headquarters and principal place of business located at 1818 Market Street, Suite 1200, Philadelphia, PA 19103.

10.     Beginning in May 2023 and continuing until July 3, 2024 Plaintiff Kristin Brodsky, an African American female, was employed by Respondent Medical Guardian, LLC in Philadelphia, PA as a "C Suite" Executive Assistant.

11.     Ms. Brodsky's duties included but were not limited to: handling communications, calendering and managing travel arrangements, administrative tasks, event coordinating, coordinating expense reporting, and scheduling and following up on meetings, all in the executive "C Suite".

12.     Ms. Brodsky's work performance was excellent at all times material and relevant hereto.

13.     From the beginning of her employment and until her termination Plaintiff was subjected to severe and pervasive racial harassment from her white superiors in the "C" suite.

14.     Chief Operating Officer Sean Coyne (hereinafter "Coyne"), a white male, refused to acknowledge Plaintiff, would not respond to her emails, and would not respond when she addressed him. He would only ask her for coffee and his mail.

15.     Mr. Coyne treated his other white subordinates the opposite way - he would greet, acknowledge, and respond to them in a cheerful manner.

16.     Mr. Coyne delegated Plaintiff's core tasks to other white subordinates and/or Plaintiff's direct superior, Eliza Salerno (a white woman who was then Senior Vice President of Operations), and routed work around Plaintiff.

17.     During her employment Plaintiff became aware from African American co-workers that Mr. Coyne sent various images and videos of African Americans being killed, beaten, and

humiliated to Director of Collections Joe Smith, an African American male.

18.    Another superior, Senior Vice President Howard Teicher (hereinafter "Mr. Teicher"), a white male, would continuously make racially derogatory comments to Plaintiff.

19.    When Mr. Teicher was going to Atlanta he told Plaintiff that "I'm going to visit your hood".

20.    Mr. Teicher told Plaintiff he was surprised that her fiancee was black; he said "I'm going to tell Eliza I met your black boyfriend".

21.    When Medical Guardian, LLC supplied food to individuals in need in Philadelphia, Mr. Teicher told Plaintiff words to the effect of "We're going down to feed your family members, but you're not really black".

22.    At a leadership retreat in June, 2024, shortly before Plaintiff was terminated, Mr. Teicher told her that "We're getting another cookie cutter white girl instead of you". Prior to Plaintiff's hiring her position was occupied by a non-disabled white female, Ashley Griffith, who resigned. Subsequent to Plaintiff's termination on July 3, 2024, her position was filled by a non-disabled white female, Megan Oyler (hereinafter "Ms. Oyler").

23.    Unlike Ms. Oyler and other white peers, when Plaintiff was hired she was not taken to lunch by the white "C" suite executives.

24.    Likewise, these executives, including Chief Executive Officer Geoff Gross (hereinafter "Mr. Gross"), a white male, and Plaintiff's direct superior, Eliza Salerno (hereinafter Ms. Salerno"), (who was initially Senior Vice President of Operations and later Chief Operating Officer) also never invited Plaintiff to other outings, including but not limited to basketball games, baseball games, meals, and happy hours, but did include her white co-workers, including but not limited to Ashley Griffith, Jennifer Fernandez, Leah Edwards, Lisa Sipes, Mischa Kregstein and Alexa Lower in these activities.

25.    Like Mr. Coyne, Mr. Gross, to whom Plaintiff reported directly, refused to acknowledge Plaintiff, would not respond to her emails, and would not respond when she addressed him.

26.    When Plaintiff asked Mr. Gross for time to meet or time on the calendar, he would say "okay we'll talk" and not communicate further with her, but Plaintiff's above white co-workers who were also his subordinates would be given lengthy meetings with him whenever they requested.

27.    Mr. Gross would ask Plaintiff to complete tasks via email and he would never respond to her directly about the task being done, he would go directly to a meeting or a call with Ms. Salerno to discuss it and Ms. Salerno would communicate with Plaintiff, often bringing harsh feedback stating "Geoff wants it this way so get it done now".

28.    Ms. Salerno would make racial comments to Plaintiff. Ms. Salerno commented on how heavy Plaintiff's hair braids looked compared to her (Ms. Salerno's) hair extensions including in August 2023 when Ms. Salerno lifted Ms. Brodsky's protective braids with her hands, asked whether they were "heavy," saying she "could never do weave" and compared Ms. Brodsky's "weave" to her own "extensions." implying that whites get extensions because they aren't heavy like weaves are. This was said in front of other colleagues.

29.    On April 18, 2024 Ms. Salerno recounted "fighting" her white "Karen" neighbor, proclaimed she was "too hood" for her "bougie" neighborhood, and said she prefers living around Black people so she can "blend in" then looked to Plaintiff for affirmation. Saying "Kristin, you know what I mean, your house is in the hood right?".

30.    Ms. Salerno would harass Plaintiff by repeatedly asking Plaintiff for items Plaintiff had already provided, making Plaintiff redo work she had already completed, and making baseless allegations about Plaintiff's performance.

31.    In October 2023 for unsubstantiated reasons and without prior counseling from Chief Executive Officer Geoff Gross or Human Resources, Ms. Brodsky was placed on a Performance Improvement Plan ("PIP") by Ms. Salerno. Ms. Brodsky satisfied every benchmark and was removed from the PIP in November, 2023.

32.    Unfortunately the disparate treatment of Plaintiff continued after this PIP was removed.

33.    From May 3, 2024 through May 27, 2024 Ms. Brodsky worked from home on doctor-mandated bed rest as an accommodation for Polycystic Ovarian Syndrome and Tachycardia (an irregular fast heartbeat). Plaintiff's daily activities were limited as a result of her Tachycardia, these activities included, but were not limited to, interacting with others, breathing, circulatory and respiratory functions, walking, and sleeping.

34.    On May 6th, while remote, Ms. Salerno insisted that Plaintiff redo work already completed, then chastised her: "You can't rely on me to check things," while simultaneously demanding that every draft be routed through her for approval.

35.     On May 6, 2024 Defendant's human resources department supplied an incomplete "manager and above" roster for Leadership Day. When HR corrected its data later that morning, Ms. Salerno still blamed Plaintiff for the discrepancies. Ms. Salerno continued blaming Ms. Brodsky even after human resources took accountability for the discrepancies.

36.     On May 7, 2024 Ms. Salerno repeatedly claimed Plaintiff's materials were "wrong", yet she circulated her own versions identical to those of Plaintiff, declaring hers "correct".

37.     On May 21, 2024 at 9:01 AM Ms. Salerno messaged "Where are you?" despite Claimant's approved medical leave status.

38.     Throughout that day (May 21, 2024) CEO Geoff Gross texted Ms. Brodsky, and at 5:30 PM Ms. Salerno accused Ms. Brodsky on Teams of "not checking in" because Mr. Gross lacked lunch, Diet Coke, snacks, and a functioning laptop, responsibilities well outside Ms. Brodsky's capacity (working from home).

39.     At 7:37 PM that evening Ms. Salerno emailed further unfounded accusations to Ms. Brodsky, including accusing her of not sending out an agenda for a senior leadership meeting, despite knowing that Plaintiff was waiting for Mr. Gross's approval of same.

40.     On June 27, 2024 there were technical IT issues during a company town hall video meeting. Ms. Salerno publically and incorrectly blamed Plaintiff for the IT issues and screamed at her in front of witnesses. This culminated with Ms. Salerno affecting a racial colloquialism as she exited the office, yelling at Plaintiff in front of numerous employees words to the effect of: "If I don't get out of here it's gonna be bad for you".

41.     Plaintiff complained to human resources the day of the incident, June 27, 2024, about Ms. Salerno's racial discrimination. HR's Jennifer Fernandez replied that she "didn't think race was involved" and ended the inquiry.

42.     Plaintiff suffered from Tachycardia and reported to human resources she was feeling stressed, vomiting, and hot and dizzy. Plaintiff went to an Emergency Department that day with chest pain, heart palpitations, and shortness of breath. She provided a doctor's note to Defendant and took leave for three days following the incident.

43.     Defendant was aware of the above medical condition and that Plaintiff was at all times disabled within the meaning of the Americans with Disability Act (ADA).

44.     A PIP was threatened by Defendant on June 28, 2024, less than 24 hours after Plaintiff's

complaint to human resources, with impossible 48 hour deliverables.

45.    Upon her return to work on July 3, 2024 Defendant terminated Ms. Brodsky's
employment, ostensibly because "it isn't working,". This despite regular weekly one-on-one
meetings between Plaintiff and CEO Gross in which no concerns were raised.

46.    At all times material and relevant hereto including at the time of her termination, Plaintiff
was a disabled individual as defined by the ADA and ADAAA who, with or without reasonable
accommodation, was qualified for and could perform the essential functions of the Executive
Assistant position.

47.    At all times material and relevant hereto, including at the time of her termination,
Plaintiff had a record of physical impairments that substantially limited one or more of her major
life activities and was regarded by Defendant as a disabled individual.

48.    Insomuch as the above explanation for the termination of Plaintiff refers to Plaintiff's
conduct, this allegation is patently without merit and is a pretext for racial and disability
discrimination and is in retaliation for her accommodation requests and complaints of racial
discrimination and harassment/hostile work environment.

49.    Plaintiff was subjected to the harassment and adverse employment decisions by
Defendant on the basis of her race and disability/perceived disability, and for retaliatory reasons,
and not because of any legitimate business reason.

50.    Defendant by and through its employees humiliated, embarrassed, and subjected Plaintiff
to mental distress and anguish through its deliberate harassment, discrimination, and retaliation.

51.    As a result of Defendant's discrimination and retaliation of Plaintiff, Plaintiff suffered
lost income and other monetary damages including the necessity of hiring an attorney to file this
suit.


### COUNT I
Title VII - Race Discrimination/Harassment in Employment

52.    Plaintiff incorporates paragraphs 1 through 51 as though set forth in full herein.

53.    By the conduct set forth in the Statement of Facts above, Defendant engaged in unlawful
employment discrimination in violation of Section 703 (a) of Title VII, 42 U.S.C. Section 2000e-
2(a).

54.    Taken together, the acts outlined above up describe a pattern of intentional discrimination against and disparate treatment of Plaintiff on account of her race (African American/black) with respect to the terms and conditions of her employment.

55.    Taken together, the acts outlined above were intentional and describe a hostile work environment based on race:

    (a)    Plaintiff suffered the intentional discrimination outlined above because of her membership in a protected class - black;

    (b)    such discrimination was pervasive and regular;

    (c)    such discrimination detrimentally affected the Plaintiff;

    (d)    such discrimination would have detrimentally affected a reasonable person of the same protected class in her position; and

    (e)    there existed in the corporate Defendant respondeat superior liability for the actions of its agents and employees.

56.    Similarly situated whites were not treated in this manner.

57.    The effects of Defendant's employment practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected her status as an employee because of her race.

58.    As a result of Defendant's action and conduct, Plaintiff has suffered emotional pain and distress, loss of income, mental anguish, and loss of enjoyment of life's pleasures.

59.    The above described acts and omissions of Defendant with regard to Plaintiff were egregious and were committed with a malicious, willful, and/or reckless indifference to the Federally protected rights of Plaintiff.

60.    Said acts and omissions of Defendant were committed by and through its management employees within their agency/employment relationships with Defendant.

61.    The extreme and outrageous acts and omissions of Defendant merit the imposition of punitive damages.

    **WHEREFORE,** Plaintiff Kristin Brodsky prays that this Court:

    (a)    accepts jurisdiction over this matter;

    (b)    impanels and charges a jury with respect to the causes of action; and

    (c)    awards the following damages:

        i.    back pay and front pay along with pre and post judgment interest;

        ii.    punitive, liquidated, and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation,

and emotional distress in order to compensate her
for the injuries she has suffered and to signal to other employers
that such acts in employment are repulsive to legislative
enactments and public policy;

    iii.    attorneys' fees, expert witness fees, the costs of this action, and
expenses as provided by applicable Federal statutes; and

    iv.    any other relief which this Court deems just and equitable.

### COUNT II
PHRA - Race Discrimination/Harassment in Employment

62.    Plaintiff incorporates paragraphs 1 through 61 as though set forth in full herein.

63.    By the conduct set forth in the Statement of Facts above, Defendant engaged in unlawful employment discrimination in violation of the Pennsylvania Human Relations Act, 43 P.C. Sections 953 and 955.

64.    Taken together, the acts outlined above describe a pattern of intentional discrimination against and disparate treatment of Plaintiff on account of her race (black) with respect to the terms and conditions of her employment.

65.    Taken together, the acts outlined above were intentional and describe a hostile work environment based on race:

    (a)    Plaintiff suffered the intentional discrimination outlined above because of her membership in protected class - black;
    (b)    such discrimination was pervasive and regular;
    (c)    such discrimination detrimentally affected the Plaintiff;
    (d)    such discrimination would have detrimentally affected a reasonable person of the same protected classes in her position; and
    (e)    there existed in the corporate Defendant respondeat superior liability for the actions of its agents and employees.

66.    Similarly situated whites were not treated in this manner.

67.    There existed in the corporate Defendant respondeat superior liability for the actions of its agents and employees.

68.    Defendant's employment practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected her status as an employee because of her race.

69.    Defendant engaged in the unlawful employment practices outlined above with malice or

reckless indifference to the state and municipality protected rights of Plaintiff.

70.    As a result of Defendant's action and conduct, Plaintiff has suffered emotional distress, loss of income, mental anguish, and loss of enjoyment of life's pleasures.

**WHEREFORE,** Plaintiff Kristin Brodsky prays that this Court:

    (a)    accepts jurisdiction over this matter;

    (b)    impanels and charges a jury with respect to the causes of action; and

    (c)    awards the following damages:

        i.    back pay and front pay along with pre and post judgment interest;

        ii.    liquidated, and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, and emotional distress in order to compensate her for the injuries she has suffered and to signal to other employers that such acts in employment are repulsive to legislative enactments and public policy;

        iii.    attorneys' fees, expert witness fees, the costs of this action, and expenses as provided for by applicable Pennsylvania state statutes; and

        iv.    any other relief which this Court deems just and equitable.

## COUNT III
Retaliation

71.    Plaintiff incorporates paragraphs 1 through 70  as though set forth in full herein.

72.    As outlined in the Statement of Facts, Plaintiff engaged in the opposition of unlawful employment practices, Defendant's described acts and omissions constituting violations of Title VII and the PHRA, by making complaints of such treatment to management.

73.    Plaintiff's said opposition was a protected activity.

74.    Defendant terminated Plaintiff, detrimentally affecting the terms and conditions of her employment, for engaging in this protected activity.

75.    Defendant's retaliatory termination of Plaintiff as aforesaid was intentional, willful and in

reckless disregard of Plaintiff's rights and interests.

76.     Defendant's termination of Plaintiff constituted unlawful employment discrimination in violation of 42 U.S.C. Section 2000e3(a) and the PHRA.

77.     The above described act of Defendant with regard to Plaintiff was egregious and was committed with a malicious, willful, and/or reckless indifference to the Federally protected rights of Plaintiff.

78.     Said act of Defendant was committed by and through its management employees within their agency/employment relationships with Defendant.

79.     This extreme and outrageous act of Defendant merits the imposition of punitive damages.

        **WHEREFORE,** Plaintiff Kristin Brodsky prays that this Court:

        (a)     accepts jurisdiction over this matter;

        (b)     impanels and charges a jury with respect to the causes of action; and

        (c)     awards the following damages:

                i.      back pay and front pay along with pre and post judgment interest;

                ii.     punitive, liquidated, and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, and emotional distress in order to compensate her for the injuries she has suffered and to signal to other employers that such acts in employment are repulsive to legislative enactments and public policy;

                iii.    attorneys' fees, expert witness fees, the costs of this action, and expenses as provided for by applicable Federal statutes; and

                iv.     any other relief which this Court deems just and equitable.

## COUNT IV
42 U.S.C. §1981 Violations

80.     Plaintiff incorporates paragraphs 1 through 79 as though set forth in full herein.

81.     Defendant by and through its agents and employees intentionally discriminated against Plaintiff because of her race (African American/black) by means of its above conduct.

82.     Taken together, the acts outlined above up describe a pattern of intentional discrimination

against and disparate treatment of Plaintiff on account of her race with respect to the terms and conditions of her employment, constituting adverse tangible employment actions.

83.     Taken together, the acts outlined above were intentional and describe a hostile work environment based on race:

     (a)     Plaintiff suffered the intentional discrimination outlined above because of her membership in a protected class-black;

     (b)     such discrimination was pervasive and regular;

     (c)     such discrimination detrimentally affected the Plaintiff;

     (d)     such discrimination would have detrimentally affected a reasonable person of the same protected class in her position;

     (e)     Plaintiff suffered the above described adverse tangible employment actions; and

     (f)     there existed in the corporate Defendant respondeat superior liability for the actions of its agents and employees.

84.     Similarly situated whites were not treated in this manner.

85.     Said acts and omissions of Defendant were committed by and through its management employees within their agency/employment relationships with Defendant.

86.     As a result of Defendant's action and conduct, Plaintiff has suffered emotional pain and distress, loss of income, mental anguish, and loss of enjoyment of life's pleasures.

87.     Taken together, the acts outlined above constitute violations of §1981.

88.     The above described acts and omissions of Defendant with regard to Plaintiff were extreme and outrageous and were committed with a malicious, willful, and/or reckless indifference to the Federally protected rights of Plaintiff, warranting punitive damages.

     **WHEREFORE,** Plaintiff Kristin Brodsky demands judgment in her favor and against Defendant and requests that this Court order that:

     (a)     Defendant compensate Plaintiff for the past and future wages lost because of its unlawful conduct;

     (b)     Defendant pay to Plaintiff compensatory damages for suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as allowable; and

     (c)     Defendant pay to Plaintiff all other legal and equitable relief recoverable under §1981 including, but not limited to, punitive damages, attorneys' fees, expert witness fees, the

costs of this action, and pre- and post-judgment interest.

## COUNT V
### ADA/ADAAA Violations
### (Disability Discrimination)

89.    Plaintiff incorporates paragraphs 1 through 88 as though set forth in full herein.

90.    Defendant by and through its agents and employees discriminated against Plaintiff because of her disability/perceived disability (hereinafter "disability") by means of its above conduct when it harassed and ultimately terminated her.

91.    Plaintiff is the member of a protected class in that she is disabled within the meaning of the ADA and ADAAA.

92.    Plaintiff was qualified to perform the position of Executive Assistant with or without reasonable accommodation.

93.    Similarly situated persons outside  Plaintiff's protected class were treated more favorably than Plaintiff.

94.    Circumstances exist related to Defendant's above cited conduct after Plaintiff became disabled/perceived to be disabled that give rise to the inference of discrimination.

95.    No legitimate, non-discriminatory reasons exist for the above cited conduct.

96.    The reasons cited by Defendant for the above cited conduct are pretext for discrimination.

97.    Defendant discriminated against Plaintiff with regard to the terms, conditions, privileges, and benefits of employment based upon her disability/perceived disability. Such discrimination constitutes violations of the ADA and ADAAA.

98.    As a direct result of Defendant's willful, wrongful, and unlawful actions in discriminating against Plaintiff in violation of the ADA and ADAAA, Plaintiff has endured pain and suffering, severe emotional distress, humiliation, embarrassment, loss of self-esteem, damage to her reputation, and loss of income and benefits and interest due thereon.

99.    The above described acts and omissions of Defendant with regard to Plaintiff were extreme and outrageous and were committed with a malicious, willful, and/or reckless indifference to the Federally protected rights of Plaintiff, warranting punitive damages.

**WHEREFORE,** Plaintiff Kristin Brodsky demands judgment in her favor and against Defendant and requests that this Court order that:

(a)     Defendant compensates Plaintiff for the wages and other benefits and emoluments of employment lost because of Defendant's unlawful conduct;

(b)     Defendant pays to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as allowable; and

(c)     Defendant pays to Plaintiff all other legal and equitable relief recoverable under the ADA and ADAAA including, but not limited to, punitive damages, employment with applicable seniority, attorneys' fees, expert witness fees, the costs of this action, and pre- and post-judgment interest.

## COUNT VI
### ADA/ADAAA Violations
#### (Retaliation)

100.    Plaintiff incorporates paragraphs 1 through 99 as though set forth in full herein.

101.    Plaintiff engaged in activity protected by the ADA and ADAAA when she requested reasonable accommodations for a qualifying reason under the law.

102.    Defendant harassed and terminated Plaintiff for engaging in these protected activities.

103.    Defendant's acts of discrimination as aforesaid were intentional, willful, and in reckless disregard of Plaintiff's rights and interests.

104.    Said acts and omissions of Defendant were committed by and through its management employees within their employment/agency relationships with Defendant.

105.    By the conduct set forth in the Statement of Facts above, Defendant engaged in unlawful retaliation in violation of the ADA and ADAAA.

106.    As a direct result of Defendant's willful, wrongful, and unlawful actions in retaliating against Plaintiff in violation of the ADA and ADAAA, Plaintiff has endured pain and suffering, severe emotional distress, humiliation, embarrassment, loss of self-esteem, damage to her reputation, and loss of income and benefits and interest due thereon.

107.    The above described acts and omissions of Defendant with regard to Plaintiff were extreme and outrageous and were committed with a malicious, willful, and/or reckless indifference to the federally protected rights of Plaintiff, warranting punitive damages.

**WHEREFORE,** Plaintiff Kristin Brodsky demands judgment in her favor and against

Defendant and requests that this Court order that:

    (a)    Defendant compensates Plaintiff for the wages and other benefits and emoluments of employment lost because of Defendant's unlawful conduct;

    (b)    Defendant pays to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as allowable; and

    (c)    Defendant pays to Plaintiff all other legal and equitable relief recoverable under the ADA and ADAAA including, but not limited to, punitive damages, employment with applicable seniority, attorneys' fees, expert witness fees, the costs of this action, and pre- and post-judgment interest.

## JURY DEMAND

Plaintiff requests trial by jury on all counts.

Dated: 1/9/2026

                                */s/ Albert J. Michell*
                                Albert J. Michell, Esquire
                                Attorney ID: 76797
                                **ALBERT J. MICHELL, P.C.**
                                40 West Evergreen Avenue
                                Suite 101
                                Philadelphia, PA 19118
                                Send correspondence to:
                                PO Box 4062
                                Philadelphia, PA 19118
                                Telephone: 215.922.2588
                                Validation of Signature Code: AJM4598

.

# EXHIBIT "A"
# NOTICE OF RIGHT TO SUE LETTER

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Philadelphia District Office
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 11/14/2025

**To:** Kristin Brodsky
11 Bridle Lane
Sewell, NJ 08080
Charge No: 530-2025-00736

EEOC Representative and phone:

267-589-9707
Legal Unit Representative

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 530-2025-00736.

On behalf of the Commission,

Digitally Signed By:Karen McDonough
11/14/2025

Karen McDonough
Deputy Director

**Cc:**
Christina Michael
FISHER & PHILLIPS LLP
Two Logan Square  100 N. 18th Street  12th Floor
PHILADELPHIA, PA 19103

Jennifer Fernandez
1818 MARKET ST STE 1200
Philadelphia, PA 19103

Albert J Michell Esq.
40 W. Evergreen Ave Suite 101
Philadelphia, PA 19118


Please retain this Notice for your records.